16 F.3d 1219
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 James F. GRAVES, Plaintiff-Appellant,
v.
Donna E. SHALALA, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 93-5226.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1994.
 
 Before: GUY and SILER, Circuit Judges; and CHURCHILL, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff, James Graves, appeals the district court's affirmation of the administrative law judge's denial of his application for disability benefits and supplemental security income under subchapter II of the Social Security Act, 42 U.S.C. Secs. 401, et seq. Graves primarily argues that substantial evidence does not support the administrative law judge's finding that Graves is not disabled. Finding Graves' arguments unpersuasive, we affirm.
 
 I.
 
 2
 Graves' first visit to a doctor for back pain was with Dr. W.H. Murrey in July 1982. Graves complained of lower back pain that had persisted for four days. Tests performed by Murrey yielded normal results, but Murrey nonetheless prescribed an aspirin-based pain reliever called Robaxisal. Graves next visited Murrey on July 9, 1984, again complaining of lower back pain, which had begun two days earlier. X-rays of Graves' spine were negative, and Murrey again prescribed Robaxisal and instructed Graves to begin a regimen of back exercises with a physical therapist. Graves revisited Murrey on July 27, 1984. Tests performed by Murrey again yielded normal results, and Murrey noted that Graves' condition had improved. Graves continued to complain of lower back pain, however, and Murrey prescribed a mild to moderate pain reliever called Naprosyn. Graves returned to Murrey's office on September 7, 1984, complaining of pain in his lower back and in the left lower quadrant of his abdomen. By this time, Graves apparently had stopped his physical therapy. Tests performed by Murrey again were normal, and Murrey did not prescribe any medication for Graves. In January 1985, Graves again visited Murrey, complaining of lower back pain that had begun three days earlier. Tests performed by Murrey were normal once again, but Murrey nevertheless prescribed Robaxisal.
 
 
 3
 Meanwhile, Graves developed a problem of chronic absenteeism from his job as a "material handler" at a warehouse. Graves was fired because of this problem on May 17, 1985, and has not been employed since.
 
 
 4
 After his January 1985 visit to Murrey, Graves did not see a doctor for his back problem until June 5, 1989, when he again visited Dr. Murrey. Graves then complained of right leg pain that had begun a week earlier. Graves reported pain during a "straight leg test" for his right leg, and Murrey prescribed a musculoskeletal pain reliever called Soma. Graves revisited Murrey on June 9, 1989, complaining of right leg pain. Graves again reported pain during a straight leg test for his right leg. Murrey suspected that Graves suffered from a slipped disc, and prescribed Tylox, a pain reliever for moderate to moderately severe pain.
 
 
 5
 Murrey then referred Graves to Dr. Timothy Schoettle, whom Graves visited on June 10, 1989. After examining Graves, Schoettle concluded that Graves might suffer from a slipped disc, although Graves' x-rays were normal and Graves was found to be "neurologically intact." Schoettle prescribed a number of pain relievers, including Tylox, and instructed Graves to resume a regimen of back exercises with a physical therapist. Graves did so, and Schoettle found Graves to be "much better" when Graves visited Schoettle's office on July 10, 1989. Schoettle apparently did not prescribe any pain medication for Graves then, and told Graves to return only if he had further problems. Graves returned on August 23, 1989, again complaining of right leg pain. Schoettle noted that Graves had stopped his physical therapy. Schoettle instructed Graves to restart his exercises and prescribed an anti-inflammatory pain reliever called Medrol.
 
 
 6
 Schoettle completed a "medical assessment of ability to do work-related activities" ("MAWRA") form concerning Graves for the Tennessee Disability Determination Services ("DDS") on September 25, 1989. Based on his previous examinations of Graves, Schoettle indicated that Graves could lift 10 to 20 pounds frequently and 20 to 30 pounds occasionally, stand and/or walk at least two hours in an eight-hour workday, and sit about six hours in such a workday. Schoettle left blank a portion of the form that asked him to "describe any other significant physical limitations, such as postural, manipulative, environmental, visual, aural, speech, etc."
 
 
 7
 A consultative examination of Graves was performed by Dr. Kenneth L. Moore for the DDS on October 12, 1989. Moore noted that Graves was not taking medication then and that Graves was doing his back exercises "on his own." Moore interpreted x-rays previously taken to reveal a "mild narrowing of the L4, 5 and L5-S1 disc spaces" in Graves' back. After performing a number of tests, Moore concluded:
 
 
 8
 The patient appears to have some symptoms by history of degenerative disc disease with mild radiculopathy. He may stand four to six hours in an eight hour day. He should avoid heavy pushing or pulling over about 50-75 pounds. He should avoid repetitive bending. He should avoid work in the flexed position. He can sit unlimited. He can lift 10-15 pounds frequently and 25-30 pounds occasionally.
 
 
 9
 (App. at 125.)
 
 
 10
 Schoettle completed another MAWRA concerning Graves on December 4, 1989. Again relying on his previous examinations of Graves, Schoettle indicated that Graves (1) should never stoop, crouch, kneel, crawl, or bend at work, but could lift 10 pounds frequently and 20 pounds occasionally: (2) could stand and/or walk for up to six hours per eight-hour work day and up to one hour continuously, and sit for up to six hours per eight-hour work day and up to one hour continuously; (3) could occasionally climb and balance; (4) should not work near moving machinery; and (5) could "reach, handle, and feel" without restriction.
 
 
 11
 Graves applied for disability benefits and supplemental security income under the Social Security Act in July 1989, near the time when Schoettle noted that Graves was "much better" because of his physical therapy. Graves alleged that he became disabled on May 17, 1985, the day he was fired from his warehouse job. Graves' application was denied initially and upon reconsideration, but Graves requested a hearing before an administrative law judge, which was held on August 1, 1990. Graves was represented by counsel at the hearing, and the ALJ heard testimony from Graves, Graves' mother, and a vocational expert ("VE"). After considering this testimony and Graves' medical records, the ALJ denied Graves' application for benefits, finding that Graves was not disabled within the meaning of the Social Security Act. On March 6, 1991, the Appeals Council for the Secretary of Health and Human Services denied Graves' request for review of the ALJ's decision. Graves thereafter sought review of the ALJ's decision in United States District Court, naming the Secretary of Health and Human Services as defendant. Both Graves and the Secretary filed motions for summary judgment. In a brief order, the district court denied Graves' motion and granted the Secretary's motion. This appeal followed.
 
 II.
 
 12
 Graves presents three arguments on appeal. First, Graves argues that his due process rights were violated by the district court's failure to specifically consider each of his five objections to the magistrate judge's report and recommendation. The district court disposed of Graves' case as follows:
 
 
 13
 In this case, the Report and Recommendation of the United States Magistrate is hereby approved and made a part hereof as fully as if copied verbatim herein. An appropriate order will be entered.
 
 
 14
 Graves buttresses this argument by asserting there is no evidence the district court discharged its duty, established by 28 USC Sec. 636(b)(1), to review de novo those portions of the magistrate's report to which Graves objected.
 
 
 15
 We considered an identical argument in Ivy v. Secretary of Health and Human Services, 976 F.2d 288 (6th Cir.1992). There, the district court had disposed of Ivy's social security claim using the exact language used by the district court in this case. We noted that in order to review the district court's decision, "we must have an indication that the district court or the magistrate judge has reviewed and considered each major, relevant, and well-articulated contention of the parties." Id. at 289. We affirmed the district court's decision with regard to those arguments addressed in the magistrate's report, despite the fact that the language used by the district judge did not specifically reference the objections made to the magistrate's report and recommendation.[1]
 
 
 16
 Here, the magistrate judge's 16-page report and recommendation thoroughly addressed the issues raised by each of Graves' five objections.[2] That the magistrate's report did not use the exact language used subsequently in the framing of these four objections is immaterial; this fact does not impact our ability to review adequately the district court's dismissal of Graves' case, and thus does not infringe upon Graves' due process rights. Moreover, we find that the district court discharged its duty under 28 U.S.C. Sec. 636(b)(1), because "[w]e assume, absent circumstances demonstrating to the contrary, [which are not present here,] that a district judge has performed this statutory duty in social security appeals[.]" Ivy, 976 F.2d at 289.[3]
 
 
 17
 Graves next argues that the ALJ erred in finding that Graves was not "disabled" within the meaning of the Social Security Act. "Disability" for purposes of eligibility for Title II disability benefits is defined by 42 U.S.C. Sec. 423(d), which provides in relevant part:
 
 
 18
 (d) "Disability" defined
 
 
 19
 (1) The term "disability" means--
 
 
 20
 (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....
 
 
 21
 ....
 
 
 22
 (2) For purposes of paragraph (1)(A)--
 
 
 23
 (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
 
 
 24
 The definition of "disability" for purposes of eligibility for Title VII supplemental security income is identical to the definition set forth in Sec. 423(d). See 42 U.S.C. Sec. 1382c(a)(3)(A), (B).
 
 
 25
 The ALJ's disability determination was based on several findings. The ALJ found that (1) Graves has the "residual functional capacity" to perform "light work," (which is defined by 20 C.F.R. Secs. 404.1567(b) and 416.967(b)), except "for the exertional limitations of being unable to lift or carry more than 20 pounds occasionally or more than 10 pounds frequently and being unable to sit or stand continuously throughout the course of an entire eight-hour workday and the nonexertional limitations of being unable to engage in stooping, crouching, kneeling, crawling, bending, pushing, pulling or working around moving machinery[.]" (2) Graves was 34 years old and thus a "younger individual" under 20 C.F.R. Secs. 404.1563 and 416.963; (3) Graves has an eighth grade, and thus a "limited," education as defined by 20 C.F.R. Secs. 404.1564 and 416.964; and (4) Graves "does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work" under 20 C.F.R. Secs. 404.1568 and 416.968. The ALJ noted that under the "grid" of 20 C.F.R. Part 404, Subpart P, Appendix 2, these four findings considered together "would direct a conclusion of 'not disabled.' " Since, however, Graves is subject to nonexertional impairments not reflected in the grid, the ALJ only used the grid result as a "framework for decisionmaking," in conformance with Social Security Ruling 83-11. The ALJ instead relied upon the testimony of the vocational expert, who stated that a person with Graves' particular impairments could work as a security guard or as an assembly line worker in the boot and shoe industry, and that there are approximately 1,190,500 of these jobs in the national economy. The ALJ thus concluded that Graves "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision."
 
 
 26
 The findings of the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. Sec. 405(g). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). In determining whether substantial evidence supports the ALJ's decision, we consider the record taken as a whole. Duncan v. Secretary of Health and Human Servs., 801 F.2d 847, 852 (6th Cir.1986).
 
 
 27
 Graves' argument on the disability issue is multi-pronged. First, Graves contends he is incapable of working as a security guard or as an assembly worker in the shoe and boot industry because of his "needs for rest and relief." This contention is meritless because the record does not suggest that Graves' needs for rest and relief are totally debilitating; rather, the reports of Drs. Schoettle and Moore both lend solid support to the ALJ's more narrow view of Graves' exertional limitations. Indeed, the language of the ALJ's findings on this point closely tracks that used in the physicians' reports.
 
 
 28
 Second, Graves contends that he "suffer[s] pain to such a degree that it can reasonably be expected to prevent his regular attendance at any job." In this context, Graves asserts in his brief:
 
 
 29
 [Graves] has the pain in his low back and it radiates down his right leg. It is intense enough to cause him at times not even to be able to sit and eat. Movement or activity of certain kinds is a precipitating and aggravating factor. Appellant has been tried on heavy medication which gave him some temporary relief, but did not restore his ability to return to the workplace. He now takes Tylenol. He has had physical therapy for the relief of his pain and it helped some, but it did not restore his abilities.
 
 
 30
 The rule by which we evaluate complaints of disabling pain is two-pronged:
 
 
 31
 [First, w]e must determine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine:
 
 
 32
 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or,
 
 
 33
 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 34
 Jones v. Secretary of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991).
 
 
 35
 The first part of this test is satisfied here because the ALJ found that Graves has degenerative disc disease. The second part, however, has not been met. Objective medical evidence does not confirm, but indeed refutes, Graves' allegations that his pain is totally debilitating. The record reveals that Graves did not see a doctor for his back pain for over four years after he allegedly became disabled. Moreover, by his own admission, Graves did not take prescription pain relievers for most of the period during which he allegedly was racked by pain, and does not take them now. It is true that Graves' medical record shows that he suffers from reduced spinal motion, which is an objective indicia of pain under Social Security Ruling 88-13. But if we concluded from this fact, standing alone, that medical evidence confirms Graves' allegations of pain, we would conflate the first and second prongs of the carefully worded test set forth in Jones. It is also true that Graves reported pain for two straight leg tests conducted by Dr. Schoettle shortly before Graves applied for benefits under the Act. These tests are of dubious "objectivity," however, relying as they do upon Graves' subjective complaints of pain during the test.
 
 
 36
 Also, there is insufficient evidence that Graves' condition is so severe that it can reasonably be expected to cause totally debilitating pain. Graves' medical record is bereft of any explicit suggestion that his condition is so severe that it might cause disabling pain. Indeed, the record implicitly forecloses any finding that Graves condition is so severe; in comprehensively describing for governmental agencies Graves' ability to work, neither Dr. Schoettle nor Dr. Moore qualified their assessment of Graves' functional capacities with any caveat that Graves' condition might cause disabling pain. If Graves' condition was in fact severe enough to cause disabling pain, such a caveat would be expected on a medical report whose very purpose was to help determine whether Graves was disabled.
 
 
 37
 Thus, Graves' disabling pain contention ultimately rests only upon his subjective allegations of pain. Although we have sometimes been willing to consider lay testimony in evaluating a claimant's complaints of disabling pain, see, e.g., Jones, 945 F.2d at 1370, in Graves' case the ALJ specifically found that Graves' "subjective complaints (including those of pain) were not fully credible to the extent that it could be concluded that [he] has been unable to perform some light exertional work." (App. at 12.) We are in no position to dispute this finding, since "[t]he ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses[.]" Bradley v. Secretary of Health and Human Servs., 862 F.2d 1224, 1227 (6th Cir.1988). In summary, then, Graves' disabling pain contention provides us with no basis for concluding that substantial evidence does not support the ALJ's finding that Graves is not disabled within the meaning of the Act.
 
 
 38
 We briefly note that Graves stresses that he was fired from his last job for absenteeism and that the VE testified that Graves could not hold a job if he could not attend work regularly. We are unmoved by these facts. First, that Graves was fired for absenteeism in no way establishes that Graves is now incapable of attending work regularly. Second, the VE testimony to which Graves points merely begs the question at issue.
 
 
 39
 Graves' final argument is that substantial evidence does not support the ALJ's finding that "significant numbers" of security guard and boot and shoe industry assembly line jobs exist in the region in which Graves lives or in several regions of the country. This argument is without merit. The VE testified that 800,000 security guard jobs existed in the United States in 1986, that this number was expected to increase 48 percent by 1990, and that these jobs were "equitably distributed throughout this region and local area." The VE further stated that in 1987, 6500 persons were employed as assembly line workers in the boot and shoe industry in Tennessee.
 
 
 40
 AFFIRMED.
 
 
 
 *
 Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 We remanded Ivy's case, however, for consideration of one argument made by Ivy that was entirely overlooked by the magistrate judge and the district court, 976 F.2d at 290
 
 
 [2]
 Graves' first objection was that the magistrate failed "to recognize that appellant's pain can be severe from a narrowing of disc space which is only described as mild radiologically." However, the magistrate carefully considered the issue of whether Graves' back condition could reasonably be expected to cause severe, disabling pain
 Graves' second objection was that the magistrate failed "to take account of the fact that appellant was fired from his last job because after he was injured he was unable to attend his job on a sufficiently regular basis to perform his job." However, the magistrate expressly mentioned this fact in his report and recommendation, and thus presumably considered its import in analyzing Graves' case.
 Graves' third objection was that the magistrate failed "to require the ALJ to meet the standard enunciated in Hall v. Bowen, 837 F.2d 272, 275 (6th Cir.1988), as to the factors to be used in determining whether the alternate jobs identified by the VE actually are available to someone of appellant's characteristics in significant numbers." However, the magistrate set forth the Hall factors and found Graves' case to be factually distinguishable.
 Graves' fourth objection was "[t]he R & R permits the ALJ to escape the duty to provide a record and a decision adequate for judicial review." In support of this argument, Graves' merely reiterates his claim that the magistrate did not follow the Hall procedure. This objection is flawed because consideration of the issue of whether the ALJ provided a record sufficient for judicial review was a necessary precondition to the magistrate's review of this case.
 Finally, Graves' fifth objection was that "[t]he appellant's attorney at the hearing on cross-examination of the VE obtained testimony that appellant could not do the jobs if he could not be regular in attendance." This objection indirectly raises the issue of whether Graves' pain or exertional limitations prevented him from regularly attending work. The magistrate thoroughly considered Graves' pain allegations and exertional limitations, however, so this objection presented an issue already addressed by the magistrate.
 
 
 [3]
 Nonetheless, we do not approve of the wording of the district court's order. A district judge's final order should indicate clearly that the objections of the claimant to the magistrate's report and recommendation have been considered